**Dawn Diane ACKO, Plaintiff,**

v.

**Harold BROWN, Secretary of Defense; Clifford L. Alexander, Jr., Secretary of the Army, Defendants.**

**Civ. No. 4-77-304.**

United States District Court, D. Minnesota, Fourth Division.

May 12, 1980.

McGovern, Opperman & Paquin, by Vance K. Opperman and Steven J. Machov, Minneapolis, Minn., for plaintiff.

John W. Matthews, Dept. of the Army, Washington, D. C., for defendants.

RENNER, District Judge.

The above-entitled matter came on for trial before the undersigned on April 14, 1980 and continued through April 15, 1980. Representing the plaintiff were Vance K. Opperman, Esq., and Steven J. Machov, Esq. Representing the defendant was John W. Matthews, Esq.

The Court, having heard the testimony, examined the evidence and being apprised of the records and files herein, hereby issues the following Findings of Fact, Conclusions of Law, Order for Judgment and the attached Memorandum.

### FINDINGS OF FACT

1. On July 22, 1973 plaintiff signed an application to become a second lieutenant in the United States Army.

2. On July 23, 1973 plaintiff signed an application to participate in the United States Army Health Professions Scholarship Program (hereinafter, the "Program"). The Program had been established by Congress in 1972. *See* 10 U.S.C. § 2120 *et seq.*

3. The Program application was a document entitled "Department of the Army Armed Forces Health Professions Scholarship Program". This document, when signed by an applicant and accepted by the Army, became a contract obligating the applicant to assume certain responsibilities in return for which the Army would make certain payments for school costs, tuition and personal living expenses. The document (hereinafter, the "Contract") was signed by Captain Lamont B. English, accepting for and on behalf of the Army.

4. On September 24, 1973 plaintiff became a Reserve Commissioned Officer of the United States Army by taking an oath of office and receiving a commission as a Second Lieutenant. She thus established her eligibility under the Contract to receive benefits under the Program.

5. Plaintiff's benefits under the Contract included, among other things, full payment for the cost of her education, books, lab fees, etc., plus a $400.00 per month tax-free stipend.

6. On August 15, 1973, in connection with plaintiff's application for the Program, she signed the following acknowledgment:

"I understand that if I am selected for enlistment or appointment and/or active duty that I will be expected to accept

such assignments as are in the best interest of the service regardless of my marital status and/or responsibility for dependents; and that it is my responsibility to make appropriate arrangements for the care of my dependents should I be required to perform duty in an area where dependents are not permitted."

As of August 15, 1973 plaintiff was unmarried and had no dependents.

7. Plaintiff graduated from Edison High School, Minneapolis, Minnesota, in 1969, ranking second in her class of 482. She thereafter attended Carlton College in Northfield, Minnesota, on a scholastic scholarship and received a Bachelor of Arts degree in biology in 1973. She then enrolled in the University of Minnesota School of Dentistry. It was for the purpose of receiving compensation and the costs of her education while in dental school that plaintiff entered into the Contract.

8. Although plaintiff entered into the Contract with some reluctance, she did so because she wanted to allow herself more time for studying and better prepare herself to become a dentist. The Program offered her the desired opportunity to go to school without having to work part time.

9. The Contract specifically obligated plaintiff to complete her dental training at the University of Minnesota and to accept an appropriate reappointment or designation within the Army following completion of her dental school program. She knew and understood this.

10. Paragraph 4 of the Contract states explicitly that plaintiff did

"understand that as a member of the Program I incur an active duty obligation as follows:

a. The active duty obligation for an officer who participates in the Armed Forces Health Professions Scholarship Program will be a minimum commitment of two (2) years.

b. The initial compilation will be based upon one year (12 month) active duty for each academic year (12 months or less) subject to the minimum obligation as prescribed in paragraph 4e.

c. Time spent in intern and residency training will not be creditable toward satisfying this obligation.

d. An officer who participates in the Armed Forces Health Professions Scholarship Program will incur no additional service obligation for intern or residency training except as required by paragraph 4e whether performed on active duty in a military facility or in an inactive duty status in a civilian facility.

e. In order to participate in a residency, I must have at least two (2) years of commitment remaining at the completion of my residency training. If I do not have two years of my original commitment under the Program remaining, I must extend for the time needed to make a total of two (2) years after completion of training."

Plaintiff understood her obligation under this paragraph.

11. Paragraph 5 of the Contract clearly and concisely obligates the plaintiff to become commissioned as an officer and to serve on active duty. Plaintiff understood her obligation under this paragraph.

12. Paragraph 8 reads as follows:

"I further understand and agree that:

a. If I am dropped for deficiency in conduct or studies, or for other reasons, I will, subject to paragraph 4 above, be required to perform active duty in an appropriate military capacity in accordance with the active duty obligation incurred.

b. If I am relieved from my active duty before the completion of the obligation under paragraph 4 above, I may be assigned to an area of health manpower shortage designated by the Secretary of Health, Education, and Welfare for a period equal to the period of any obligation from which I was relieved."

Plaintiff understood the meaning of this paragraph.

13. Paragraph 10 of the contract reads as follows:

"I understand and agree to reimburse the Government for all tuition and other educational costs which it incurred, or any portion thereof, as determined by the Secretary of the Military Department, if I fail to complete my obligation under this contract as a result of action not initiated by the Government. The Secretary of the Military Department may waive this requirement when he determines that such waiver is in the best interest of the Government."

Plaintiff testified that she understood that paragraph 10 controlled the agreement and that she understood it to mean that should she desire to leave the Program prior to finishing her dental training she would have the right to do so by merely tendering repayment of the money received from the Army. She testified that U. S. Army Captain Richard Goularte led her to believe that this understanding was correct. She testified that at the time she signed the Contract she was "getting hungry" and wanted the money but that it was her intention to leave until an indefinite future time the decision as to whether she would stay in the Army and in the Program. She further testified that the only thing that she understood in the Contract was paragraph 10. The Court rejects this testimony.

14. Plaintiff signed the Contract knowingly and voluntarily accepting the consequences. She knew that the purpose of the Program was to provide dentists for the Army and that it was not an ordinary scholarship program which would allow participants the option to repay the money advanced in lieu of fulfilling the service obligation.

15. On Thanksgiving Day of 1976 plaintiff married Richard Loesch to whom she had become engaged some months earlier.

16. Sometime during September 1976 plaintiff informed the Army by letter that she desired to discontinue her participation in the Program. She requested that payment of all monies due her under the Program in the future be cancelled. She further requested that the Army work out a schedule for repayment of the monies previously received under the Program. The Army informed plaintiff by letter dated September 30, 1976 that she was obligated under the Contract to perform according to its terms and complete the educational phase of the Program.

17. The total amount expended by the Army under the Program to and in behalf of plaintiff is approximately $23,800.00. Included in this figure is the sum of $3,656.25, the total of checks received by plaintiff but not cashed by her following her unilateral rejection of the Program in September 1976.

18. On or about April 22, 1977 plaintiff was informed that she was to report for active duty on September 7, 1977 at Fort Sam Houston, Texas.

19. On April 22, 1977 plaintiff asked to be relieved of the active duty obligation because of her newly acquired marital obligations to her husband. She again offered to refund all sums received by her or in her behalf because of her participation in the Program. This offer was again refused by the Army.

20. Plaintiff graduated from the University of Minnesota School of Dentistry in 1977.

21. The Army has fulfilled all of its obligations under the Contract.

## CONCLUSIONS OF LAW

1. Plaintiff is a duly commissioned officer in the United States Army.

2. Plaintiff was a participant in the Health Professions Scholarship Program established by 10 U.S.C. § 2120 *et seq.* from 1973 to 1977.

3. Plaintiff incurred a four-year obligation to serve on active duty by participating in the Program for a period during which she was afforded all its benefits.

4. The agreement entered into with the Army by plaintiff is unambiguous on its face as a matter of law. Plaintiff is not entitled to rescission of the Contract.

5. Plaintiff entered into the Contract knowingly and voluntarily and not by reason by any mistake of fact.

6. Defendants are entitled to judgment as a matter of law.

## ORDER FOR JUDGMENT

IT IS HEREBY ORDERED that judgment be granted in favor of defendants Harold Brown and Clifford Alexander and against plaintiff Dawn Diane Acko.

LET JUDGMENT BE ENTERED ACCORDINGLY.

## MEMORANDUM

Plaintiff brings this action to enjoin the Army from inducting her into military service. She contends that the Court should disregard the fact that she took an oath as a noncommissioned Army officer and signed an application (hereinafter, "Contract") for the Army Health Professions Scholarship Program (hereinafter, "Program") obligating herself to serve one year of active duty for every year of dental school for which she received benefits and should accept, instead, her contention that she believed paragraph 10 of the Contract allowed Program participants the option to tender repayment of the benefits received in lieu of fulfilling their service obligation.

Because the Court believes the Contract to be unambiguous on its face and because the Court believes that plaintiff understood the plain meaning thereof, it must deny the relief requested.

The Contract explicitly sets forth plaintiff's specific service obligation. Indeed, the entire Contract looks to fulfillment of that obligation and is replete with references thereto. The general purpose of the Program, set forth in 10 U.S.C. § 2121, is also clear from the Contract itself. That purpose was to provide medical and denial manpower for the all-volunteer Army. It was not a scholarship program designed to benefit the public at large.

Only an ignoramus could fail to comprehend the clear meaning of the Contract. This the plaintiff is not. Rather, she is an intelligent, well educated adult. She was graduated second in her high school class, attended an excellent private liberal arts college on an academic scholarship, and did well enough there to gain acceptance to dental school, ultimately completing that program as well.

Paragraph 10 merely provides that if a participant fails to complete his or her active duty obligation for a reason other than a Government-initiated action, reimbursement must be made. Nowhere are repayment schedules or interest amounts set forth and nowhere does paragraph 10 or any other part of the contract, or other document, statute or regulation, provide any language *enabling* a participant in the program to opt for repayment rather than the active service expressly required.

Furthermore, plaintiff's own actions belie her claimed understanding of the Contract. For example, in her initial letter to the Army requesting information concerning the Program, plaintiff asked, "May I ask how I am supposed to demonstrate motivation toward military service?"

Prior to signing the Contract, she received from the Army a statement of the general purposes of the Program clearly pointing out the Army's willingness to provide the funds for medical or dental educations in return for participants' active service as commissioned officers following graduation (Defendant's Exhibit 3).

In submitting her application for the Program plaintiff later wrote: "*The Health Professions Scholarship Program* would enable me to devote all my energy to training for a *Dental* career in the Army." (Emphasis in original) Plaintiff further went on to say, "I want to practice in a situation where the emphasis is on practicing dentistry, not money management; where I will be well equipped, and able to provide excellent service to Americans from many backgrounds; where there will be job security and a reliable retirement program; where I will have expert guidance early in my career and increasing responsibility. I believe the Army would provide such a situation and the Health Professions Scholarship Program would enable me to be a better dentist." (Defendant's Exhibit 8)

She then not only signed the Contract but took an oath of office and accepted a commission as a second lieutenant in the United States Army. In order to qualify for the commission she took and passed a physical examination on August 1, 1973 (Defendant's Exhibit 11). She also signed a written acknowledgment of her obligation to accept active duty, wherever assigned. For each of three successive years during the course of the Program she signed a request for a delay of active duty to allow for the continuance of her dental studies. Each year she received an order granting her request for delay.

It is obvious to the Court from her initial letter to the Army renouncing further participation in the Program that plaintiff realized that she was obligated to serve on active duty (Defendant's Exhibit 2, p. 21).

It was only after her decision to marry that she attempted to rescind her enlistment Contract. Her letter to United States Senator Wendell Anderson in early 1977 clearly indicates her desire to be rid of the obligations because of her recently changed marital status: ". . . I do not want to be dragging my husband around the country," she wrote. "I especially do not want to drag him to a place he cannot get a job . . . My husband says he doesn't want to retire yet, he is just receiving his masters in Mechanical Engineering. Please release us from the Army so that both of us can find rewarding jobs and stay together." (Defendant's Exhibit 2, p. 4)

Plaintiff, for her own purpose, entered into the Contract. She followed through by accepting a commission as an officer in the United States Army. For three years she accepted the benefits, and it was only after her engagement that she sought release.

While the Court rejects the government's contention that *In Re Grimley*, 137 U.S. 147, 11 S.Ct. 54, 34 L.Ed. 636 (1890), bars an enlistee from ever challenging an enlistment contract, the law is clear that some quantum of adverse influence must have been exercised in order for a challenge to succeed. In the instant case, there was no solicitation, no duress, no misrepresentation and no compulsion.

To the contrary, the evidence plainly indicates that plaintiff knew exactly what she was getting into when she signed up with the Program. It strains credulity to argue that the only thing plaintiff understood was paragraph 10 and that she understood it to mean what it clearly does not mean. At most, the Court could believe that plaintiff thought that paragraph 10 might provide a loophole. However, as much as the Court sympathizes with her current plight, such a belief is insufficient to void the Contract. Plaintiff was an intelligent, mature adult, and she freely and deliberately entered into the Contract. She is, therefore, bound by its terms and must abide by them.