**Seaman Apprentice Mary Francis WITHUM, Petitioner,**

v.

**Captain W. J. M. O'CONNOR, Commanding Officer, USNS Roosevelt Roads, Deiba, Puerto Rico, Eduardo Hidalgo, Secretary of the Navy, and Harold Brown, Secretary of the Department of Defense, Respondents.**

Civ. No. 80–2214.

United States District Court, D. Puerto Rico.

Feb. 10, 1981.

Jeffrey A. Denner of Denner & Benjoya, Boston, Mass., for petitioner.

Raymond L. Acosta, U.S. Atty. and E. M. deJesus, Asst. U.S. Atty., Hato Rey, P. R., for respondents.

## MEMORANDUM DECISION AND ORDER

NICHOL, Senior District Judge.

This action is before the Court on a Petition for a Writ of Habeas Corpus. Petitioner, an enlisted woman in the United States Navy, is seeking a discharge because of alleged fraudulent representations made to her by Navy recruiter Phillip Esposito. Respondents argue, however, that petitioner has not exhausted her administrative remedies and that any representations made by Esposito were not fraudulent.

### FACTS

Petitioner met several times with Navy recruiter Phillip Esposito during the month of September, 1979. At the time of the meetings petitioner was a scholarship student attending Boston University. Petitioner's uncontroverted testimony at the hearing held in this court on November 17, 1980, was that Esposito told her that while she was in the Navy she could apply to any one of 55 colleges, including Harvard and Yale. Esposito told her that if she were accepted she could easily arrange a duty station in the Boston area, that the Navy would pay a substantial portion of her tuition, and that she would have no difficulty arranging her duty assignments to permit her to attend college as a full-time student. Petitioner testified that she was interested in obtaining several months technical training in data processing or intelligence at an "A" school prior to attending college. Esposito told her that on the basis of her extremely high examination scores she could attend any "A" school she chose at any time a placement was available.

Petitioner testified that she rejected an offer of an "A" school placement at the completion of her basic training because it was not in her area of interest and because Esposito had told her that a transfer would be virtually automatic when the right "A" school became available. Petitioner also testified that she had not applied to "A" school or college because she was informed, on several occasions, by career counselors and others that assignment to "A" school or transfer to another base near an accredited university of her choosing was impossible before completion of her present tour of duty.

At USNS Roosevelt Roads, petitioner has been assigned to the base recreation department mowing lawns and painting rocks, and to ministerial work in a canteen.

Petitioner's father also testified that Esposito told him that his daughter had enlisted in the Navy, that she had wonderful educational opportunities available to her, and that there were 55 colleges available to her.

On May 23, 1980, petitioner filed a request for discharge from the Navy with her commanding officer and the Inspector General of Naval Recruiting in Orlando, Florida. She alleged that she was fraudulently induced to enlist in the Navy by promises of educational benefits.

On June 19, 1980, her commanding officer stated in a letter to Mr. Denner, petitioner's counsel, that he had requested "a thorough and impartial investigation" and that he would "ensure that appropriate action is taken to forward the request to the official who has authority to make such a decision after the investigation has been completed."

Petitioner filed suit on October 16, 1980, for a writ of habeas corpus. The report of the investigation of the Naval Recruiting Command, made part of the record at the hearing, indicates that the Boston Recruiting District completed its investigation on July 21, 1980, and that the Office of the Inspector General dismissed petitioner's claim on August 19, 1980, with orders to inform petitioner's commander. At the November 17th hearing in United States District Court, the parties stipulated that the recommendation of the Navy was to deny petitioner's administrative request. To date, however, there had been no indication, formal or informal, that this decision has actually been implemented in the form of a final decision.

## EXHAUSTION OF REMEDIES

■ Application to the Board for Correction of Naval Records (BCNR) is not a prerequisite to federal jurisdiction in military discharge cases. The question of the need for an appeal to the BCNR of an adverse military administrative decision is directed to the discretion of the trial court rather than to its jurisdiction. *Montgomery v. Rumsfeld*, 572 F.2d 250 (9th Cir. 1978), *Nelson v. Miller*, 373 F.2d 474 (3rd Cir. 1978), *Hayes v. Secretary of Defense*, 515 F.2d 668 (D.C.Cir.1975), *Ludlum v. Resor*, 507 F.2d 398 (1st Cir. 1974), *United States ex rel. Tobias v. Laird*, 413 F.2d 936 (4th Cir. 1969).

In *Montgomery v. Rumsfeld, supra*, the Ninth Circuit Court of Appeals held that the trial court should determine whether exhaustion of administrative remedies is required and, if so, whether the Court should, in its discretion, retain jurisdiction pending application to the Board for Correction of Military Records. In making its determination of whether an application to the Board is necessary the Court indicated it must balance the interest of petitioner in obtaining adequate and expeditious relief against the interests of the agency in applying its own expertise, correcting its own errors, making a proper record, and in maintaining its decision making role. *Montgomery, supra* at 254.

The balance of competing interests in this case tilts in petitioner's favor. Her liberty continues to be encumbered by her retention in the Navy. Further delay occasioned by an appeal to BCNR and the inevitable resubmission of the case to a federal court for final determination of petitioner's status will prevent petitioner from meeting the April, 1981, deadline for submission of applications to colleges for the fall 1981 semester. The delay caused by an appeal to

the BCNR would subject petitioner to unnecessary, but irreparable, harm.

Conversely, the special interest of the BCNR in applying its expertise and in maintaining its administrative role are not applicable because no factual record superior to the record now before this Court can be prepared by BCNR. As Esposito admitted to the Court at the November 17th hearing, he has no memory of his meeting with petitioner ("I thought it was another chick.").

No Navy regulations are being challenged. Thus, there is no need for the BCNR to be allowed to interpret rules within this particular ambit of the military.

Also, judicial economy is best served by proceeding to a decision on the merits of the case since a complete record is before the Court.

Respondents rely on *Seepe v. Department of the Navy*, 518 F.2d 760 (6th Cir. 1975), for the proposition that federal district courts may not entertain petitions for writs of habeas corpus for discharge from the Navy unless petitioners have appealed to, and been denied by the BCNR. The Sixth Circuit is one of three minority circuits that have held that failure to appeal to the appropriate board bars jurisdiction in federal courts. *See also, Diliberti v. Brown*, 583 F.2d 950 (7th Cir. 1978), *Hodges v. Callaway*, 499 F.2d 417 (5th Cir. 1974). The Sixth Circuit based its decision upon the interest of an agency in reviewing its own regulations and the special competence of the Board in military matters. *Seepe, supra* at 764, 765.

■ The distinction between the majority rule that exhaustion of remedies is not a jurisdictional prerequisite and the contrary minority rule that it is, is of no consequence in this case because the minority position recognizes exceptions within which petitioner falls. Appeal to the Board is not necessary where the remedy will not provide adequate relief, where the petitioner may suffer irreparable harm, or where appeal to the Board would be futile, *Von Hoffburg v. Alexander*, 615 F.2d 633 (5th Cir. 1980), *Seepe, supra*, at 762; or where there is an allegation of fraud in the inducement of an enlistment contract, *Bemis v. Whaler*, 341 F.Supp. 1289 (S.D.Cal.1972), *Acko v. Brown*, 489 F.Supp. 216 (D.Minn.1980); or where there is a significant administrative delay attributable to the military. *Jamison v. Stetson*, 471 F.Supp. 48 (N.D.N.Y.1978).

■ This case falls within three independent and separate grounds for proceeding directly to an adjudication on the merits, even under the minority tests. First, petitioner has alleged fraud in the inducement of her contract. *Bemis v. Whaler, supra.* Second, the substantial delay of five months in the administrative determination of petitioner's request for discharge since the Inspector General's recommendation of denial is attributable to the Navy. *Jamison v. Stetson, supra.* Third, given Esposito's recanting of his testimony and the already significant delay, it is probable that any further appeal would be futile.

Respondents also argue that the minority rule that would require dismissal of petitioner's action has been adopted in the District of Puerto Rico in the case of *Rina de Toledo Wagner v. United States*, civil number 77–1835, June 9, 1980. This unpublished opinion of a hearing for a preliminary injunction and motion to dismiss, however, is inapposite on its facts to the instant case. The plaintiff in *Wagner* made no effort to apply for administrative relief from the Army itself under the Army's regulations governing discharges. The first and only relief sought was for a breach of contract action commenced in federal court. This is in sharp contrast to the instant case in which petitioner applied for discharge from the Navy in accordance with Navy regulations. 32 C.F.R. section 730.1 et seq.

Additionally, the published rule of law in the District of Puerto Rico was announced in *Suro v. Padilla*, 441 F.Supp. 14 (D.P.R. 1974), in which the District Court held with the majority of circuits that failure to appeal to the appropriate board does not preclude the Court from exercising jurisdiction.

Petitioner has exhausted all reasonable administrative remedies available to her prior to filing a petition for a writ of habe-

as corpus. She applied for discharge in accordance with Navy regulations. To date, some eight months after petitioner applied for discharge, her application has still not been conclusively denied. Therefore, it is the holding of this Court that under any of the aforementioned tests, petitioner has exhausted her administrative remedies and this Court has jurisdiction of the case.

## LIABILITY OF THE NAVY FOR REPRESENTATIONS OF ITS AGENT

Respondents argue, relying upon *Jackson v. United States*, 573 F.2d 1189 (Ct. Cl. 1978), that the rule that the government may not be required to perform contracts entered into by its agents acting beyond their actual authority applies to fraudulently induced enlistment contracts. This Court finds this Court of Claims decision unconvincing and believes that the statement relied upon by respondents is dicta and unrelated to the Court's reasons for dismissing Jackson's claims.

Since the *Jackson* decision, however, two courts have considered and rejected the argument that the military services are not bound by the misrepresentations of recruiters when the remedy sought is rescission of the recruiting contract.

In *Pence v. Brown*, 627 F.2d 872 (8th Cir. 1980), the Eighth Circuit Court of Appeals, in response to the government's argument that the Air Force was not bound by its agents' representations, stated:

> This case is quite different from a suit against the government for misrepresentations in contracting in which the complaint seeks money damages or specific performance. The propositions that the government cannot be held responsible for the misstatements of its agents does not extend to representations which induce a contract when the remedy sought is rescission. *Id.* at 874.

Similarly, in *Santos v. Franklin*, 493 F.Supp. 847 (E.D.Pa.1980), the Court held that the Navy must discharge from active duty a reservist who had failed to meet reserve requirements in reliance upon erroneous advice of Navy officials.

On the facts before me it would be unconscionable to permit the Navy to disavow the act of its agent on the ground that the agent had erred. *Id.* at 855.

■ Respondents' reliance on *Jackson* is misplaced. *Pence* and *Santos* represent the current state of the law in these type of cases and are consistent with this Court's interpretation of the law. Accordingly, this Court holds that the Navy is bound by the oral promises, misstatements, and representations of its recruiter.

## SUFFICIENCY OF MISREPRESENTATIONS

■ Military enlistment contracts are subject to traditional principles of contract law. *Peavy v. Warner*, 493 F.2d 748 (5th Cir. 1974). A recruit is entitled to rescind an enlistment contract if the military is unable to perform its obligation. *Novak v. Rumsfeld*, 423 F.Supp. 971 (N.D.Cal.1976); if the terms of the contract are so ambiguous as to be misleading, *Shelton v. Brunson*, 465 F.2d 144 (5th Cir. 1972); or if the recruit was induced to enter into the contract by fraud or false representations. *Chalfant v. Laird*, 420 F.2d 945 (9th Cir. 1969). Even if the misrepresentations were innocently or nonnegligently made, if they were material and induced the prospective recruit to enlist, the contract may be rescinded. *Pence v. Brown, supra* at 874. It is not necessary, however, that the false representations deprive the recruit of every benefit of the contract. *Pence v. Brown, supra.*

■ The focus of the conversation between petitioner and Recruiter Esposito was on the higher education benefits available to petitioner through enlistment in the Navy. The recruiter's statements and representations as to the ready access of enlisted Navy personnel to "A" schools and college programs were tailored to appeal to petitioner's special interest. Esposito represented that the Navy would supply the educational goals she had set for herself and these misrepresentations went to the heart of her stated reasons for investigating and enlisting in the Navy. These mis-

representations went beyond puffery, sales talk, or speculation as to the future effect of a contract. The Navy has an obligation to "be straightforward in its contractual dealings" and to "accurately inform prospective enlistees of both the available education-training opportunities and the stringent qualifying criteria for these attractive programs." *Novak v. Rumsfeld, supra* at 972.

▮ Petitioner was assured that on the basis of the contract she signed she would be able to obtain "A" school training and attend any college she chose that would accept her while the Navy paid a substantial portion of her tuition. She is now assigned to menial tasks inconsistent with her goals and with no opportunity to acquire the promised training.

Thus, the misrepresentations made to petitioner were material; they relate to the purpose of her contract, distort its meaning, and compel rescission. This Court, however, does not wish to interfere with the administration of any military personnel program or decision any more than is absolutely necessary to protect the legal rights of individuals involved. *See, Frentheway v. Bodenhamer,* 444 F.Supp. 275 (D.Wyo.1977).

Therefore, this Court grants Seaman Apprentice Mary Withum's petition for a writ of habeas corpus and it is hereby ordered that petitioner be released from the United States Navy, unless the Navy within 20 days of the issuance of this order agrees to perform the contract consistent with the findings of this Court.[1] *Cf., Pence v. Brown,* 627 F.2d 872 (8th Cir. 1980).

This opinion constitutes the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

---

[1]. The Navy must, at petitioner's election, transfer petitioner to an active duty station where she can attend an "A" school in data processing or intelligence if a placement is available and/or transfer petitioner to a duty station in the Boston area, pay a substantial portion of her tuition, and arrange her duty assignments to permit her to attend college as a full-time student.