Michael S. **LIBRIZZI**

v.

**UNITED STATES NAVY.**

Civ. No. H–81–531.

United States District Court,
D. Connecticut.

Sept. 30, 1981.

Michael S. Librizzi, pro se.

George J. Kelly, Jr., Asst. U. S. Atty., Richard Blumenthal, U. S. Atty., Hartford, Conn., for defendant.

## RULING ON PETITION FOR A WRIT OF HABEAS CORPUS

CLARIE, Chief Judge.

The petitioner, Michael S. Librizzi, a Naval enlistee, is seeking an honorable discharge from the United States Navy through his pro se application for a writ of habeas corpus. He represents that on June 30, 1978 he enlisted in the Navy for four years and simultaneously executed an agreement to extend that enlistment for an additional two years in the Advanced Electronics Field (AEF) Training Program. At the same time, he volunteered for duty on submarines, provided that the Navy found him to be eligible for such assignment. The petitioner claims that because he was ultimately disqualified for submarine duty due to asthma, a malady which he disclosed prior to his acceptance by the Navy, his enlistment agreement and applicable Navy regulations afford him the option of either being retained in the service in a program he desires or being honorably discharged at the convenience of the Government.

The petitioner also represents, and it is conceded by the Navy, that after his rejection as a submarine volunteer, he twice sought an in-training assignment as a Nuclear Reactor Operator. He claims that although both requests received favorable recommendations from his commanding officer, and although he met all physical and academic eligibility standards required for this training, his application was denied because of his asthmatic condition. He thus argues that he is entitled to a discharge under departmental rules.

The Government, on the other hand, asserts that petitioner never was promised a submarine assignment at enlistment, but only that the petitioner would be assigned to some phase of the AEF Program. The Government concedes that had petitioner been disqualified from AEF training, he would have been entitled to receive an honorable discharge. However, the Government argues that since the petitioner completed the AEF training successfully and was paid the increased salary commensurate with his accelerated E–4 service rating, he has received all the benefits of his enlistment contract, and is therefore obligated to complete his six-year term in the Navy. The Court finds that the Government's position has merit and accordingly denies the petition.

### Facts

The petitioner, Michael S. Librizzi, was born on August 9, 1960, and enlisted in the Navy on June 30, 1978. He had been given a pre-enlistment physical examination on November 21, 1977, while he was still a high school student. At that time, he filled out a medical history questionnaire in which he disclosed his problems with asthma and shortness of breath. He also revealed that he had been hospitalized as an asthma patient in the New Rochelle Medical Center in New Rochelle, New York in 1970. However, the petitioner affirmatively represented that he was at that time in good health and taking no medication. The examining doctor's memorandum indicated that Librizzi's last asthma attack had occurred in 1970 at the age of ten, and that his lungs were clear as of the 1977 examination.

On the same day as his four-year enlistment, Librizzi signed an agreement to extend his enlistment for an additional 24 months in the AEF Program. That agreement specifically noted that all of the provisions of the AEF Program had been explained to the petitioner, including the obligation to serve for six years in order to be eligible for advanced electronics training.

The agreement listed several ratings, or job positions, which were included in the AEF Program. Immediately above petitioner's signature, the agreement specifically stated that no promise had been made to him regarding any future duty assignment. (Government Exhibit 2). Librizzi also executed a 24-month extension of his enlistment contract, (Government Exhibit 3), in order to qualify for entry into the AEF Program and to obtain accelerated advancement to an E-4 job classification with increased salary benefits.

Finally, the petitioner signed an AEF Submarine Volunteers form which specifically stated the following:

"I am enlisting in the Advanced Electronic Field Program and volunteering for duty in submarines. I under stand that:

a. My eligibility for duty in submarines has not been fully verified and that no guarantee of ultimate assignment to submarines has been made to me.

b. The sole purpose of this statement is to ensure that I am identified as a potential submarine candidate and therefore may receive further information, counseling and testing concerning submarine duty at RTC and 'A' School.

c. Failure to be accepted for duty in submarines in no way whatsoever affects the basic terms of the program in which I am enlisting." (Government Exhibit 1).

On April 23, 1979, while stationed at the Naval Guided Missiles School of Dam Neck, Virginia Beach, Virginia, the petitioner executed his final acceptance of accelerated advancement to the E-4 Petty Officer's rating, with its accompanying increased pay grade (Government Exhibit 4). Petitioner's acceptance of accelerated advancement was governed by Bureau of Naval Personnel Manual (BUPERSMAN) 1050310(17) which provided:

"Personnel enrolled in the AEF Program are authorized accelerated advancement to Petty Officer Third Class (pay grade E-4) in accordance with the procedures contained in BUPERSMAN 1050150, 1050300, and 2230150 upon successful completion of class 'A' school (Phase 1) in the upper two thirds of their class, provided they are eligible to continue in the program."

Subitem 17 specifically provided that upon acceptance of the accelerated advancement and extended enlistment for AEF, one year of the two-year extension in service could not be cancelled thereafter, whether or not petitioner completed the nuclear power or advanced electronics training program. (Government Exhibit 6).

After enlisting in the Navy, additional facts concerning petitioner's medical history came to light. On July 10, 1978, while he was in training at the Great Lakes Naval Training Center in Illinois, he was given a physical examination. The examination consultation sheet. indicated as follows: "1972. Pollen, dogs, cats, feathers—last seen March 1977—asthmatic Bronchitis treated several times—local reaction only." (Petitioner's Exhibit A). Petitioner also began to suffer from asthma-related symptoms. On September 28, 1979, he collapsed after running approximately a one-mile distance and received emergency medical treatment at the branch clinic in Dam Neck. The Navy corpsman determined that petitioner's collapse had been caused by hyperventilation due to exercise and noted that Librizzi's last asthma attack had occurred about one and one-half years earlier. However, when Librizzi was seen on October 1, 1979 by a Navy doctor, the entry on his health record read as follows:

"Recently bothered by hyperventilation symptoms v. asthma or both . . . asthma v. hypervent. induced asthma."

Librizzi's symptoms persisted, and between October 1, 1979 and November 2, 1979, he reported to the medical clinic several times, complaining of shortness of breath.[1] De-

---

1. The following is a chronological record of medical attention received by Librizzi during this period:

9/28/79 Lungs—slight wheezing and rales bilateral. Ran approx 1 mile before collapsing and hyperventilating. Last asthma attack 1½ years.

spite all of these problems, Librizzi was examined on November 15, 1979, and found physically qualified for transfer, following completion of his training, to his first actual duty station—the submarine USS Kamehamea at New London.

After reporting to the Kamehamea in February of 1980, the petitioner was given yet another examination by the medical authorities at the New London Submarine Base in order, once again, to determine his fitness for submarine duty. This time, however, petitioner did not pass the examination, and on May 30, 1980, he was officially found to be physically unqualified for submarine duty because of asthma. (Government Exhibit 5).

The petitioner had already been awarded the Navy Enlistment Classification Code (NEC) 3325, after he had successfully completed the AEF training. This classification indicated that he was qualified to operate and maintain submarine inertial navigational systems. After he was disqualified from submarine duty, this NEC code was removed and he was given a classification for general duty. Thereafter, from May 30, 1980 until July 1981, he was assigned to the Commander, Submarine Group Two, in New London, to perform general administrative tasks.

During this time the petitioner was placed on limited duty so that he might undergo desensitization allergy therapy treatment in order to determine a maintenance dosage level of medication which would stabilize his asthmatic condition. Petitioner never conscientiously pursued this program, however, and he thus never reached the required level of medication.

On two occasions following his disqualification for submarine service, Librizzi applied for admission to the Nuclear Power Training School, a specialized program which was not connected with his AEF training. Despite the recommendation of his Commander, Librizzi was not accepted into the program.

On June 12, 1981, Librizzi filed for an honorable discharge from the Navy. His petition stated that when he reported to the submarine USS Kamehamea for his first duty assignment, he was disqualified for submarine duty due to his asthmatic condition. He explained the fact that he had fully disclosed this condition prior to his enlistment, as his application confirms. His petition noted further that, upon disqualification, he was ineligible for Strategic Weapons Systems positions and his NEC in the Advanced Electronics Field Program was removed. He asserted that this ineligibility for the AEF Program was due to circumstances properly disclosed prior to his enlistment, and that under departmental regulations and the provisions of the enlistment agreement, he had the option of either remaining in the Navy in a program which he desired and was qualified for or receiving an honorable discharge by reason of convenience of the Government. The petitioner noted that his two requests for admission into the Nuclear Power Program had been denied, despite his having obtained the recommendations of his superior officers.

On June 23, 1981, Captain J.D. Apple, Chief of Staff of Submarine Group Two at the New London Submarine Base, recommended to the Commander of Naval Military Personnel that the petitioner's request

---

10/10/79 Asthma attack seen Friday night patient had tightness in chest. patient has wheezing in both lungs. History of childhood asthma problem since 1970. Recently bothered by hyperventilation symptoms v. asthma or both.

10/26/79 Difficulty breathing. Patient was running to class and started to have difficulty at breathing. Patient has asthma and hyperventilation.

10/29/79 Asthma treatment. Patient was re-examined by me and I informed Dr. Masson.

10/31/79 Shortness of breath.

11/2/79 Shortness of breath. patient has been seen in this clinic for asthma attack/hyperventilation. Patient has past history of asthma as child and stated that he has been having more frequent attacks and medications given him thus far have been of no help. Medicines not working so he says. Chest clear—no wheezing at this time. No inflation noted. Impression? Asthmatic.

for an honorable discharge be granted for the reasons stated by Librizzi. On July 15, 1981, the Chief of Naval Personnel, acting through Commander P.E. Clemons, overruled the Captain's recommendation and denied Librizzi's discharge. Her denial stated in part:

"If in the process of training and screening you had been disqualified for the training guaranteed to you upon enlistment, it would have been appropriate for a discharge to be offered. However, inasmuch as you were not disqualified for the training which you received under the provisions of the AEF program, and inasmuch as you did receive accelerated advancement as well as the advanced training, you are not eligible for discharge. Your enlistment contract is determined to be legal and binding. In view of the above, your request for discharge as contained in reference (a) is necessarily disapproved as you have received the benefits for which you enlisted and were guaranteed."

Subsequent to the date of this denial and after this suit had been commenced, the Navy offered to restore petitioner's NEC 3325 rating and assign him to a submarine tender (a surface vessel) on which he would have the opportunity to utilize the advanced electronics training he had received. The petitioner declined that offer.

### Discussion of the Law

Petitioner's claim for an honorable discharge is premised upon the Navy's failure to disqualify him for service on submarines, until after he had reported to New London for duty. By that time, petitioner had signed the two-year reenlistment contract and had completed his AEF training in return for which he owed the Navy two additional years of service. Petitioner argues that if the Navy had been diligent in evaluating his physical condition either before or during his AEF training, as contemplated by the Navy regulations, he would have been found to be ineligible to continue in the submarine path of AEF training, and, upon disenrollment, he would have

been entitled to either an honorable discharge or placement in a program which he desired and for which he was qualified. Petitioner contends that the Navy, because of its negligence during his AEF training, should now be estopped from denying his discharge.

■ In considering petitioner's claim, this Court is guided by the general principle that judicial review of actions by the armed services is perforce limited. *Orloff v. Willoughby*, 345 U.S. 83, 93–94, 73 S.Ct. 534, 539–540, 97 L.Ed. 842 (1953). As has been observed in this circuit, "[o]rderly government requires us to tread lightly on the military domain, with scrupulous regard for the power and authority of the military establishment to govern its own affairs within the broad confines of constitutional due process." *Friedberg v. Resor*, 453 F.2d 935, 937 (2d Cir. 1971).

■ Nevertheless, it is equally true that the armed services are bound by their own regulations. This principle was articulated in *Hammond v. Lenfest*, 398 F.2d 705 (2d Cir. 1968), where the court held that "a validity promulgated regulation binds the government as much as the individuals subject to the regulation; and, this is no less so because the governmental action is essentially discretionary in nature." *Id.* at 715.

■ In the present case, petitioner relies on regulations contained in the Bureau of Naval Personnel Manual (BUPERSMAN) which read:

"1050310 ADVANCED ELECTRONICS FIELD (AEF) PROGRAM

. . . .

8. Commands and activities involved in the screening and selection of AEF candidates must ensure that only qualified persons, who have been thoroughly briefed concerning the rigid academic and performance requirements associated with the program are accepted. The following eligibility criteria have been developed to produce candidates with the appropriate background and must be met by all applicants:

. . . .

e. Must meet physical requirement as described in Army Regulations (AR) 40–501 plus normal color perception, and for the submarine phases must meet physical requirements as described in the Manual of the Medical Department (MANMED) 15–29.

18. Individuals who fail to remain qualified for this program will be disenrolled and, when possible, will be reassigned to another class 'A' school for which they meet all eligibility requirements.... If disenrollment is precipitated by reasons which are present and documented prior to enlistment, discharge from the naval service may be authorized.

. . . .

e. Submarine volunteer students in the AEF Program who no longer meet the physical requirements for assignment to duty in connection with submarines as specified in MANMED 15–29 will be disenrolled from the submarine path of the AEF Program."

MANMED provides in pertinent part that "[t]he following conditions are considered disqualifying for submarine duty: ... confirmed history of Bronchial Asthma after age 12." MANMED 15–32.2.G.2.

Taken as a whole, these regulations fall short of guaranteeing a trainee in the AEF program transfer or an honorable discharge, even where disqualifying physical conditions are discovered *during* AEF training. To be sure, BUPERSMAN 1050310(8)(e) and MANMED 15–29, read together, indicate that the Navy is bound by its regulations to screen AEF applicants to ensure that only the physically qualified are admitted into the program. However, in the event that the Navy fails to discover a physical handicap before a trainee begins the AEF program, the regulations merely provide that, upon disenrollment, reassignment to another school is effected "when possible" and discharge "*may* be authorized." (Emphasis added). There is no requirement that a trainee in the AEF program be *automatically* transferred or discharged. Thus the petitioner is attempting to make regulations which were only horta-

tory when applicable, mandatory when retroactively applied.

Moreover, it is quite clear from the language of the regulations that provision is made for transfer or discharge only in the event that a trainee is disqualified *during* training. The regulations relied upon by petitioner are applicable only to those "[i]ndividuals who fail to remain qualified for this program." Such a limitation is consistent with the Navy's position in this case. The Navy concedes that it is the training program which constitutes the consideration for the reenlistment contract, and that where an enlistee does not receive the promised training, it would be unfair to hold him to two extra years of service. Where, however, an AEF trainee completes his education and training, and only subsequently becomes disenrolled from serving in the capacity for which he was trained, the regulations require that the enlisted man serve the additional two years.

█ The petitioner is also not aided by the language of his enlistment contract. Whereas it is true that the Navy is bound by its contracts, *McCracken v. United States*, 502 F.Supp. 561, 569 (D.Conn.1980), the contract in the present case is clear and unambiguous. Like the regulations, it allows for transfer or discharge only where a trainee is disqualified while still enrolled in the AEF Program. The contract provides in pertinent part:

"I must remain eligible for a security clearance and meet the physical qualifications for the program. If at any time it is determined that I am ineligible to continue in the Advanced Electronics Field Program, the following actions will be taken:

a. If the cause for my ineligibility is due to circumstances which existed but were either unknown or not properly disclosed prior to my enlistment, I will be assigned to an alternate program. Such assignment to be based on my qualifications, preferences and the needs of the service.

b. If the cause for my ineligibility is due to circumstances which existed and

were properly disclosed prior to my enlistment, I will have the following options:

(1) Retention in the Naval service in a program for which I am qualified and desire, or

(2) Honorable discharge from the Naval service by reason of Convenience of the Government." (Government Exhibit 2).

Where, as here, an enlistee is disqualified from a particular service path after receiving his training, he has received the benefits of his bargain under the contract, and he is provided no recourse other than to serve out the enlisted term. In addition, it should be noted that appearing immediately above petitioner's signature on the enlistment contract were the words "[n]o promise has been made regarding duty assignment." Accordingly, the Court finds that the Navy is not bound by either the regulations or the enlistment contract to grant the petitioner a discharge.

The Court is aided in reaching this conclusion by cases recently decided in this circuit. In *McCracken v. United States*, 502 F.Supp. 561 (D.Conn.1980), a serviceman, who had received advanced training for work on submarines in return for a two-year extension of his enlistment contract, requested additional training, complaining that his training had been inadequate and that he had not been trained on the most advanced equipment. When the Navy denied his request for additional training, he petitioned for discharge from serving the two additional years. After the Navy denied the petition, petitioner left his post without authorization and filed a petition for a writ of habeas corpus in the district court where the court upheld the Navy's denial, noting that "the Navy has given McCracken the very program of education for which the extension agreement was executed." *Id.* at 569. Similarly, in *Nixon v. Secretary of the Navy*, 422 F.2d 934 (2d Cir. 1970), the court held that an enlistee, who voluntarily removed himself from submarine duty after receiving advanced training, was not entitled to a discharge and cancellation of his enlistment contract in view of

the fact that he had received all of the training which he had been promised. Construing a BUPERSMAN provision which provided for cancellation where an enlistee had not received "any of the benefits" for which the extension was executed, the court held that

"Nixon was the recipient of sufficient benefits contemplated by the extension agreement to bar mandatory cancellation. These include his attendance at and graduation from Nuclear Power School, instruction as Nuclear Plant Operator, and the basic submarine course, as well as his advancement to higher pay grade." *Id.* at 938.

The court also observed that:

"It is clear that by sending a man to the school the Navy has lost his services for an extended period of time, and has made a considerable investment in the expectation of his future Navy service. Even though Nixon was unable to use his training in the Polaris submarine service, he was apparently able to serve on a submarine tender or other submarine support assignments." *Id.* at 940.

The present case is distinguishable from cases which have upheld petitions for discharge where an enlistee did not receive the benefits which he was promised. For example, in *Withum v. O'Connor*, 506 F.Supp. 1374 (D. Puerto Rico 1981), the court granted an honorable discharge to an enlistee who was promised specialized training as well as an expense paid education at any one of a number of colleges, but who was instead assigned to performing menial tasks. Similarly, in *Pence v. Brown*, 627 F.2d 872 (8th Cir. 1980), the court upheld a petition for honorable discharge where the Air Force had promised an enlistee a commission as major upon completion of medical studies, whereas in fact the enlistee was entitled only to the rank of captain.

This case is also distinguishable from *Corniel-Rodriguez v. Immigration and Naturalization Service*, 532 F.2d 301 (2d Cir. 1976), which carved a narrow exception out of the general rule that the Government may not

be estopped from enforcing its rules based on the conduct of its agents. In *Corneil-Rodriguez*, the court held that the Government was estopped from deporting an alien who had married before entering this country, where a State Department official had failed to warn her that marriage would lead to the revocation of her visa. In reaching that conclusion, the court noted that the governmental official had failed to follow a departmental regulation which affirmatively required warnings concerning the effects of marriage on visa status. In addition, the court emphasized the severity of the sanction (deportation) as well as the lack of sophistication of the petitioner whom the court described as "a naive and poorly education alien." *Id.* at 306. None of these factors is presently before this Court. Moreover, the Supreme Court has recently exhibited a reluctance to construe the estoppel exception too broadly. In *Schweiker v. Hansen,* 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981), *rev'g per curiam Hansen v. Harris,* 619 F.2d 942 (2d Cir. 1980), the Court reversed a second circuit holding that the Government was estopped from denying Social Security benefits to an applicant where a field officer had provided misinformation concerning eligibility. Where, as in the present case, there has been no denial of benefits, it is clear that the Government is not estopped by the misrepresentations of its agents.

Librizzi has received all of the training which he was promised. In addition, the Navy has promised to assign him to a position in which he will be able to utilize his training. In return for this, petitioner is obligated to complete his enlisted term. Accordingly, the petition for an honorable discharge is denied.

SO ORDERED.