627 F.2d 872
 62 A.L.R.Fed. 853
 John W. PENCE, M.D., Appellee,
v.
Harold BROWN, Secretary of Defense; and Hans Mark, Acting
Secretary of Air Force; and Edwin C. Hudson, Colonel, USAF,
Director, Personnel Actions, Colonel Charles Lipscomb, Wing
Commander, and Colonel Kenneth Curtis, Hospital Commander,
USAF, Regional Hospital, Minot AFB, North Dakota, Appellants.
 No. 80-1052.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 9, 1980.
Decided Aug. 15, 1980.
 
 Susan Sleater, Atty., Appellate Section, Civil Div., Dept. of Justice, Washington, D. C., argued, for appellants; Alice Daniel, Asst. Atty. Gen., James R. Britton, U. S. Atty., Michael Kimmel, and Robert E. Sutemeier, Captain, U. S. Air Force, Washington, D. C., on brief.
 Michael D. Shanks, Holbrock, Jonson, Bressler & Houser, Hamilton, Ohio, argued, for appellee; Timothy R. Evans, Hamilton, Ohio, on brief.
 Before HEANEY and ARNOLD, Circuit Judges, and OVERTON, District Judge.*
 ARNOLD, Circuit Judge.
 
 
 1
 This is an appeal by Harold Brown, Secretary of Defense, and others from a judgment in the United States District Court for the District of North Dakota, the Honorable Bruce M. Van Sickle, United States District Judge, presiding. Dr. John Pence, an Air Force Reserve Officer, petitioned the Court for a writ of habeas corpus and injunctive relief releasing him from a two-year active-duty commitment in the Air Force. After a trial, the District Court, in an unreported memorandum dated November 2, 1979, ordered Dr. Pence released from the Air Force with an honorable discharge conditioned on his repayment of the public funds expended on his behalf during his medical-school training. Dr. Pence was given an honorable discharge on November 7, 1979. A final judgment was entered January 2, 1980, and this appeal was taken that same day. We affirm the decision of the District Court with the modification of remedy set out below.
 
 
 2
 Dr. Pence, a physician, entered the Air Force Medical Scholarship Program in 1973 during his first year at the University of Tennessee Medical School in Memphis, Tennessee. Before he signed the enlistment agreement, he had numerous conversations, some by telephone and some in person, with Air Force recruiters. Several of these telephone conversations were with recruiters at the Air Force Military Personnel Center at Randolph Air Force Base, Texas, who were authorized to administer the policies of the scholarship program and to serve as primary contacts with potential participants. Dr. Pence was told that he would enter active duty as a major, that he would be eligible for promotion to lieutenant colonel in four years, and that he would have his choice of duty base. Dr. Pence testified that he joined the program with the idea of remaining in the Air Force as a career officer and because of that, his decision was based, in part, on the representations as to rank and the chance of quick promotion. The enlistment contract that he signed was silent as to rank, promotion opportunities, and geographical assignment. It merely recited that in return for payment of his medical school tuition and a monthly stipend, he would serve twenty-four months on active duty in the Air Force. Upon signing the agreement he became a second lieutenant on inactive duty.
 
 
 3
 In 1977, during the second year of his post-graduate work as a resident in pediatrics, Dr. Pence learned that under then current regulations he would enter the Air Force as a captain rather than as a major. He later made several unsuccessful attempts to resign his commission. He finally reported for active duty on January 12, 1979.
 
 
 4
 In September of 1979 he filed this suit seeking a writ of habeas corpus on the basis that he had been induced to sign the enlistment contract by the material misrepresentation that he would enter active-duty status as a major.[1] The District Court found that he had indeed been induced to sign the contract by an "innocent, material, and nonnegligent misrepresentation," justifying rescission. On November 7, 1979, five days after the Court's order was entered, Dr. Pence repaid the money the Air Force had paid to him during medical school, and he was on that date released from the Air Force with an honorable discharge.[2] This appeal followed in due course.
 
 
 5
 There are virtually no disputed facts in this case. What is disputed by the parties is the legal significance of the facts adduced at trial. The District Court found that the Air Force recruiters made statements to Dr. Pence in 1973 that were material, though innocent, misrepresentations. Besides his own testimony, Dr. Pence produced three other Air Force doctors who testified that they too had been told in 1973 that they would enter active duty as majors. The trial court's finding that the misrepresentations were made and that they were material cannot now be overturned unless it is clearly erroneous. There is ample proof in the record to support the finding of material misrepresentation on the basis of the testimony of Doctors Pence, Nelson, Chailett, and Robinson, and Captain Glen Havel, an Air Force recruiter. The District Court further found that Dr. Pence had been induced to enter the contract by these misrepresentations and that the "difference in grade . . . (was) a material factor to the execution of the contract." We find no error in this conclusion.
 
 
 6
 Claims that an enlistment contract is invalid or has been breached are decided under traditional principles of contract law. Peavy v. Warner, 493 F.2d 748 (5th Cir. 1974). When a contract has been procured by fraud or material misrepresentation, even though innocently and non-negligently made, the injured party may rescind the contract. United Forest Products Co. v. Baxter, 452 F.2d 11, 16 (8th Cir. 1971); Restatement of the Law of Contracts, § 476, comment (b). The enlistment contract is subject to these principles. Bemis v. Whalen, 341 F.Supp. 1289 (S.D.Cal.1972). In Shelton v. Brunson, 465 F.2d 144 (5th Cir. 1972), for example, the petitioner had been led to believe when he signed a reenlistment agreement that he had been certified as physically qualified for a commission. After he signed the agreement the Air Force found he did not meet the physical qualifications, and he was dropped from the program. The Court found that if the Air Force had led him to believe that he was eligible for the commission in order to induce him to reenlist, then the contract was subject to rescission. Id. at 147. See also Peavy v. Warner, 493 F.2d 748 (5th Cir. 1974); United States v. Norman, 296 F.Supp. 1270 (N.D.Ill.1969).
 
 
 7
 This case is quite different from a suit against the government for misrepresentations in contracting in which the complaint seeks money damages or specific performance. The proposition that the government cannot be held responsible for the misstatements of its agents does not extend to representations which induce a contract when the remedy sought is rescission. Compare Federal Crop Insurance Corp. v. Merrill, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947), with Shelton v. Brunson, supra, and Kostelac v. United States, 247 F.2d 723 (9th Cir. 1957).
 
 
 8
 Defendants also argue that rescission is not warranted because the Air Force has already performed substantially all of its obligations to Dr. Pence and he is, therefore, now obligated to fulfill his commitment. See Borschowa v. Claytor, 568 F.2d 616 (9th Cir. 1977); Nixon v. Secretary of Navy, 422 F.2d 934 (2d Cir. 1970).[3] That might well be true if Dr. Pence had discovered the recruiters' errors while in medical school and had said nothing about it while continuing to take the Air Force's money. The record is clear, however, that he discovered that he would be placed on active duty as a captain in 1976, during the second year of his residency, after the Air Force had already paid for his basic medical school training.[4] While the Air Force contends that even then he did not act promptly enough to justify rescission, exhibits introduced at trial make it clear that he began trying to resign his commission reasonably soon. In fact, he asked for and received advice from Air Force personnel as to the best way to proceed.[5] It cannot be said that the receipt of tuition and expenses before he learned of the mistake bars Dr. Pence from seeking rescission now.
 
 
 9
 The Court is aware that the scholarship program Dr. Pence participated in was created to alleviate a critical shortage of medical personnel in the armed services. The Court does not wish to interfere with the administration of this or any other military personnel program any more than is absolutely necessary to protect the legal rights of individuals involved. For that reason, we think a modification of the District Court's judgment is appropriate. In Frentheway v. Bodenhamer, 444 F.Supp. 275 (D.Wyo.1977), a habeas suit also brought by an Air Force doctor, the Court rescinded a military reenlistment contract when the Air Force refused to waive its own regulation to remedy its own mistake which had made performance of the contract impossible. At issue was a Variable Incentive Pay agreement which the Air Force refused to perform. Implicit in the opinion is the idea that were the Air Force willing to perform, habeas would be inappropriate. We think that reasoning also applies here.
 
 
 10
 The judgment of the District Court is therefore modified to this extent: The granting of the writ of habeas corpus is affirmed unless the Air Force agrees within 15 days of the issuance of this Court's mandate to place Dr. Pence on active-duty status as a major for the remainder of his twenty-four month commitment, with full privileges and pay retroactive to the date of his entering on active duty, and with the rights to be considered for promotion that were outlined before the enlistment contract was signed. Should the Air Force choose this option of reinstating Dr. Pence as a major, the District Court should enter an order directing the Air Force to repay to Dr. Pence the money he paid to it on November 7, 1979. If the Air Force, by written instrument filed in the District Court within the time indicated, does not elect to keep its promise, the judgment will stand affirmed unconditionally, and Dr. Pence's honorable discharge will become indefeasible.[6]
 
 
 11
 Affirmed as modified.
 
 
 
 *
 The Honorable William R. Overton, United States District Judge for the Eastern District of Arkansas, sitting by designation
 
 
 [1]
 Dr. Pence's other claims of misrepresentation as to eligibility for promotion to lieutenant colonel and choice of geographical assignment were not reached by the District Court
 
 
 [2]
 At the time of his discharge he had served ten months of his twenty-four-month term of active duty
 
 
 [3]
 Nixon v. Secretary of Navy dealt with the question whether the Navy had followed its own regulations governing the cancellation of extension of enlistment agreements. The benefit-to-the-serviceman analysis was tied to the interpretation of a Navy regulation controlling mandatory cancellation of extension agreements. The regulation prohibited mandatory cancellation when the serviceman had received benefits from the agreement. The Court was reviewing an administrative determination that the plaintiff had received benefits when he attended special nuclear-power schools. The Court also reviewed a discretionary decision by the Chief of Navy Personnel and found that it was not so arbitrary as to justify judicial intervention. Nixon in no way dealt with the issue of misrepresentation, but merely stands for the familiar proposition that the government must follow its own regulations
 Borschowa v. Claytor, supra, held that "habeas relief ought not to be accorded a member of the Armed Services . . . where, as here, the breach consists wholly of the non-payment of money." Id. at 617. The present case involves more than the simple non-payment of money. In Borschowa the Court of Appeals directed the District Court to see that the petitioner received the money due him.
 
 
 [4]
 Dr. Pence received his medical school tuition, books, and a monthly stipend during his second and third years of medical school. Upon graduation he was granted a deferment of active duty to complete an internship and residency in pediatrics at his own expense
 
 
 [5]
 He was told by Air Force personnel officers that the easiest way to rescind the contract was to apply for a discharge based upon community essentiality. His application was denied. He then applied to the Air Force Board for the Correction of Military Records, which found that Dr. Pence had relied upon misrepresentations made to him by Air Force recruiters. The Board stated that it did not have the authority to grant him a discharge, an issue the Board thought best suited for a civil court
 
 
 [6]
 Appellee argues that this case became moot when he was discharged. The case is not moot. Eagles v. Samuels, 329 U.S. 304, 67 S.Ct. 313, 91 L.Ed.2d 308 (1946)