Joseph Barrett RAMEY, O.D., et al., Plaintiffs,

v.

UNITED STATES of America, et al.,* Defendants.

Civ. A. No. 78–2128.

United States District Court, District of Columbia.

Feb. 26, 1982.

Stephen Daniel Keeffe, Washington, D.C., for plaintiffs.

Joan M. Wilbon, U.S. Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM OPINION

JOYCE HENS GREEN, District Judge.

This case is brought by 15 optometrists and one veterinarian, all of whom are now serving as qualified professionals in the United States Air Force, Army or Navy. Each of the plaintiffs participated in the Armed Forces Health Professions Scholarship Program (AFHPSP) or similar military procurement programs including the Senior Student Program (SSP) and the Reserve Officers Training Corps (ROTC), under which the individuals received educational

---

* In accordance with Fed.R.Civ.P. 25(d)(1), defendant Caspar Weinberger, Secretary of Defense, has been substituted for Harold Brown; defendant Verne Orr, Secretary of the United States Air Force, has been substituted for John C. Stetson; defendant John O. Marsh, Jr., Secretary of the United States Army, has been substituted for Clifford J. Alexander; and defendant John Lehman, Secretary of the United States Navy, has been substituted for W.G. Claytor.

or monetary benefits in exchange for military service obligations. The plaintiffs claim that they were induced to enter the service by the representations of recruiters whose alleged promises of benefits and pay have not been honored by the government. All of the plaintiffs signed military service contracts between 1972 and 1975 and the plaintiffs entered into active duty after July 1, 1975.

The plaintiffs sought and obtained certification of this proceeding as a class action, the class being defined under Fed.R.Civ.P. 23(b)(1)(A) to include:

All optometrists and veterinarians who, because of one or more military recruiters' representations that they would receive $100 per month professional pay and receive longevity credit for time spent in optometry or veterinary school for purposes of calculation of pay and promotion, participated in the Armed Forces Health Professions Scholarship Program or other military procurement program for professionals and thereby incurred an obligation to serve on extended active duty in the military, and who have been denied said professional pay and longevity credit by the United States Military.

Following the certification of the class, plaintiffs filed an amended complaint for mandamus, declaratory judgment, injunctions and damages. They seek special pay for the period between July 1, 1975 and September 30, 1977, longevity credit[1] and constructive service credit[2] for their years in professional school and claim that the defendants' denial of those benefits allegedly promised by the recruiters constitutes a breach of contract by defendants. They argue that the representations of the recruiters operate to estop the government from denying plaintiffs the allegedly promised benefits. Plaintiffs also assert that they have been deprived of their Fifth Amendment due process rights because

they are not given the same benefits accorded AFHPSP physicians and dentists.

In response, the defendants filed a motion for judgment on the pleadings or, in the alternative, for summary judgment on the ground that the statutes which govern special pay, longevity credit, and constructive service credit do not authorize the benefits sought by the plaintiffs. Furthermore, the defendants state that all of the plaintiffs have received credit for promotion purposes and the SSP and ROTC participants have received longevity credit for purposes of calculating pay, albeit not to the extent or level purportedly promised by the recruiters.

The defendants reject the plaintiffs' contention that the government is bound by the representations of its recruiters rather than by the letter of the applicable statutes when the two conflict. According to the defendants, any oral representations from the recruiters did not become a part of the plaintiffs' enlistment contracts and there is no basis for finding an implied contract right enforceable on an estoppel theory. The defendants further state that no violation of the equal protection clause of the Constitution exists because there is a rational basis for differentiating between optometrists and veterinarians on one hand and physicians and dentists on the other, in that the latter groups are more difficult to attract and retain in the service.

Disposition by summary judgment is appropriate if no material issues of fact are disputed. (Fed.R.Civ.P. 56). The plaintiffs contend that a genuine issue remains as to the content of the recruiters' representations (that is, whether the recruiters indeed told the plaintiffs that they would receive the benefits sought in this action), but the resolution of that issue is not material to the disposition of this case. For the reasons discussed below, the plaintiffs' claims must be rejected with entry of summary judgment in favor of defendants.

1. Longevity credit is credit for time spent in optometry or veterinary school while in a military procurement program for purposes of calculating salary.

2. Constructive service credit refers to the number of months credit given an officer for being in a health professional program for purposes of placement in a promotion list.

*The Plaintiffs' Rights to Equal Protection under the Law Have Not Been Violated.*

The acute need for physicians and dentists in the military provides a rational basis for differentiation in the pay and benefits awarded to members of those professions as opposed to veterinarians and optometrists. "Historically, [military physicians and dentists] have been among the most difficult groups to attract and retain on active duty." S.Rep. No. 95–400, 95th Cong., 1st Sess. 6, *reprinted in* [1977] U.S. Code Cong. & Ad.News 2548, 2554. Congress has structured its monetary incentive provisions accordingly. Any disparity of treatment merely reflects the severity of need for certain professionals in the military and does not support plaintiffs' claim under the equal protection clause.

*The Government Cannot Be Estopped by the Alleged Representations of its Recruiters from Applying Statutes Governing Special Pay and Credit for Purposes of Pay and Promotion.*

The plaintiffs charge that the various military recruiters represented to them that were they to participate in the AFHPSP or other military procurement program they would receive professional (bonus) pay of $100.00 a month for each month of active duty. The SSP participants do not claim to have been promised longevity or constructive service credit, but, the AFHPSP plaintiffs contend that the military recruiters with whom they spoke indicated that upon graduation the plaintiffs would enter the service in the rank of captain and would receive credit for their four years of professional education in calculation of pay.

Assuming, for purpose of this ruling, that these promises were indeed made, then they were clearly in conflict with the controlling statutes in effect at that time. The statutes governing special pay for optometrists and veterinarians when the plaintiffs were recruited provided for special pay for officers called to active duty on or before July 1, 1975. (Amended in 1973 from "July 1, 1973.") On September 30, 1977, the statutes were amended to reinstate special pay for optometrists and veterinarians, effective October 1, 1977. No statute has ever authorized special pay for veterinary or optometry officers who entered active duty after July 1, 1975 for the time between their entry and October 1, 1977.

The Armed Forces Health Professions Scholarship Act, 10 U.S.C. § 2126, which embraces all of the procurement programs at issue in this action, provides that "service performed while a member of the program shall not be counted (1) in determining eligibility for retirement other than by reason of a physical disability incurred while on active duty as a member of the program, or (2) in computing years of service creditable under [statutes regarding computation of pay]." Under Air Force Regulation 45–26, (Defendants' Exhibits U, V, W), regardless of the procurement program, optometry school graduates enter active duty as First Lieutenants with two or in some cases three (but never four) years promotion list credit and veterinarians enter in the temporary grade of Captain.

The government contends that if the recruiters represented to plaintiffs that they would be entitled to anything more than that provided for by the governing statutes and regulations, they were acting beyond the scope of their authority, and the government cannot be estopped from denying their unauthorized acts.[3]

There is no specific precedent to indicate whether a plaintiff may demand specific performance of a military enlistment contract procured by a recruiter acting without authority by asserting the principle of estoppel against the government.[4] In *Feder-*

---

**3.** The plaintiffs argue that the recruiters' representations were authorized by the government, but this contention lacks merit. The scope of the recruiters' authority was explicitly defined by the statutes enacted by Congress to authorize the benefits in question. Any promises precluded by those statutes were by definition unauthorized.

**4.** In the past decade numerous courts have permitted *rescission* of enlistment contracts procured by misrepresentation (*see e.g. Quinn*

al Crop Insurance Corp. v. Merrill, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947), the Court noted in dicta that "anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority," (Fed. Crop Ins. Corp., at 384, 68 S.Ct. at 3); the government was not held responsible there for the unauthorized promises of its agent. However, the more recent case of Schweiker v. Hansen, 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981), indicates that circumstances giving rise to a successful claim of estoppel against the government may exist but would be rare indeed. See also Note, Equitable Estoppel of the Government, 79 Colum.L.Rev. 551 (1979). In Hansen, the respondent made one oral inquiry to a field representative of the Social Security Administration as to her eligibility for "mother's insurance benefits" and in reliance upon the incorrect answer she received, did not apply for benefits to which she was entitled. The Supreme Court, noting that the respondent could have obtained the correct information by consulting the statutes or regulations on the books, denied retroactive benefits and held that the government was not estopped from applying the requirement that any individual seeking benefits must have submitted a written application.

In Boggs v. Regan, Civil Action 79–1090, (D.D.C., decided Sept. 18, 1981), this Court distinguished Hansen by noting that the Boggs plaintiffs had made "every effort to obtain information from all sources including the responsible decisionmakers" to no avail. Estoppel was applied against the government based upon a finding that "the plaintiffs cannot be charged with knowledge of the law, since they have no means to protect themselves by ascertaining the correct state of the law." (Boggs, slip op. at 5.)

Accordingly, even were inaccurate promises made by the eager recruiters, the circumstances do not warrant the application of estoppel against the government. The plaintiffs could have determined the special pay, longevity credit, and constructive service credit (if any) to which they would be entitled by examining the controlling statutes and regulations. In Hansen, the Court refused to apply estoppel because the statements of the government's agents did not amount to affirmative misconduct which caused the respondent to take action, or fail to take action, that she could not correct at any time. Hansen, 101 S.Ct. at 1474. The situation is the same here. Plaintiffs could have ascertained the true state of the law and modified their conduct accordingly.

Our ready understanding for plaintiffs' reliance upon the representations of their recruiters is no less than that for the unavailing plaintiff in Hansen who, to her substantial loss, relied upon the information she was given at the Social Security office. While inequitable results may emerge from precedential constraint, they cannot be avoided here, nor could they be overcome in Hansen where the Supreme Court implicitly determined that the harm to functioning government which could flow from imposing specific performance of statutorily invalid promises made by lower authority government employees must outweigh the interests of individuals who may have been deceived by these oral misrepresentations. *The Plaintiffs Do Not Have a Contractual Entitlement to the Special Pay Allegedly Promised.*

The plaintiffs assert that they became "entitled" to special pay in the amount of $100.00 per month as of the date they signed their service contracts and therefore may draw special pay for the period between July 1, 1975 and October 1, 1977, despite the fact that they did not enter active duty until after July 1, 1975. Plaintiffs argue that Larionoff v. United States,

v. Brown, 561 F.2d 795 (9th Cir., 1977); Pence v. Brown, 627 F.2d 872 (8th Cir., 1980); Shelton v. Brunson, 465 F.2d 144 (5th Cir., 1972); Withum v. O'Connor, 506 F.Supp. 1374 (D.Puerto Rico, 1981), but those cases are

"quite different than a suit against the government for misrepresentations in contracting in which the complaint seeks money damages or specific performance." Pence at 874.

533 F.2d 1167 (D.C.Cir., 1976), *aff'd United States v. Larionoff,* 431 U.S. 864, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977) controls this issue, but that argument lacks foundation. *Larionoff,* unlike this case, involved the repeal rather than the expiration of a provision authorizing a bonus.

In *Larionoff,* the plaintiffs entered into reenlistment contracts with the United States Navy between 1968 and 1970, knowing that under the statutes then in effect their military skills ratings made them eligible for a "variable reenlistment bonus" (VRB). What was not understood, however, due to the "complexity and ambiguity of the regulations" (*Larionoff,* 431 U.S. at 877, n. 19, 97 S.Ct. at 2158, n. 19) was the date at which eligibility for the bonus was to be determined—whether eligibility and the vested right to the bonus attached when the contracts were signed or when the plaintiffs entered into the period of extended enlistment. Effective June 1, 1974 Congress repealed the statute authorizing the bonus. The 1974 amendment specifically included a savings clause to preserve *regular* reenlistment bonuses for soldiers then on duty who would have received bonuses upon entering extended enlistment but made no mention of *variable* enlistment bonus recipients. One Plaintiff (Johnson) had not entered into the period of his new contract when the amendment took effect. He contended that he was entitled to the VRB at the award level in effect when he signed his reenlistment contract.

In affirming the Court of Appeals' grant of relief, the Supreme Court recognized that "[a] soldier's entitlement to pay is dependent upon statutory right", *Larionoff,* 431 U.S. at 869, 97 S.Ct. at 2154, *quoting Bell v. United States,* 366 U.S. 393, 401, 81 S.Ct. 1230, 1235, 6 L.Ed.2d 365 (1961), and that "the rights of the affected service members must be determined by reference to the statutes and regulations rather than to ordinary contract principles." *Id.* The Court identified the "relevant statute" governing the plaintiffs' claims to be the statute *in effect* when the plaintiffs signed their reenlistment contracts. It focused on the language of the statute (which did not

clearly state when the right to bonus pay attached), the purpose of Congress in enacting it (which was "to provide at the reenlistment decision point a promise of a reasonably certain and specific bonus", *Larionoff,* 431 U.S. at 878, 97 S.Ct. at 2158), and the rationale behind its repeal (which showed no intention to affect the rights of service members who had already decided to re-enlist). Examining all those factors, the Court found that the earlier statute gave rise to a "contractual entitlement." *Larionoff,* 431 U.S. at 880, 97 S.Ct. at 2159. With regard to plaintiff Johnson, the Court held that unless Congress, in repealing the VRB program, intended to divest Johnson of the rights he had already earned, the repeal could not affect his right to receive a VRB, even though the date on which it was payable had not yet arrived. *Larionoff,* 431 U.S. at 879, 97 S.Ct. at 2159.

■ The circumstances that supported the Supreme Court's finding of a contractual entitlement to the VRB in *Larionoff* are lacking in this case. Here, the law did not change so as to divest the plaintiffs of earned rights, and analysis of the language, purpose, and legislative history of 37 U.S.C. §§ 302a and 303 show that no contractual entitlement to special pay was conferred upon the plaintiffs when they were recruited. The language of the special pay act in effect when the plaintiffs signed their contracts contained no ambiguity as to when the right to special pay would vest. 37 U.S.C. §§ 302a and 303 stated clearly that the bonus applied only to officers who entered active duty by July 1, 1975. That class of officers could not possibly be determined with certainty before that date. As in *Jablon v. United States,* 657 F.2d 1064 (9th Cir., 1981), (a case decided in light of *Larionoff*), "any right to receive the bonus payment was *conditioned upon* entry [into] active duty." *Jablon* at 1066, n. 2. (Emphasis added). Moreover, unlike the statute at issue in *Larionoff,* the relevant statutes here, 37 U.S.C. §§ 302a and 303, were not enacted to provide a "reasonably certain and specific bonus" to which the plaintiffs had an immediate vested right. They were

designed to help close the gap between military pay and civilian pay levels, but only for persons entering the service by July 1, 1975. Lastly, the legislative history of the repeal of the reinstatement of the Special Pay Act plainly states that Congress did "not intend that the reinstatement of special pay be made retroactive for service prior to October 1, 1977." S.Rep. No. 95–400, 95th Cong., 1st Sess. 3, *reprinted in* [1977] U.S. Code Cong. & Ad.News 2548, 2550. Clearly, optometrists and veterinarians who entered active duty in the 27 months between July 1, 1975 and October 1, 1977 could not claim pay until the reinstatement took effect.

Because 37 U.S.C. § 302a and § 303 did not confer on plaintiffs a contractual entitlement to $100 per month special pay for the months before October 1977, and because precedent and legislative history do not support estopping the government from applying statutes and regulations which preclude the benefits these plaintiffs seek, judgment will be entered in favor of the defendants. An appropriate judgment accompanies this Memorandum Opinion.