First Lieutenant Michael J.
TREMBLAY, United States
Army, Petitioner,

v.

John O. MARSH, Jr., Secretary, United
States Army, Respondent.

Civ. A. No. 83–1395–N.

United States District Court,
D. Massachusetts.

March 30, 1984.

Mitchell Benjoya, Denner & Benjoya, Boston, Mass., for petitioner.

Wm. Joyce, Asst. U.S. Atty., Boston, Mass., for respondent.

## MEMORANDUM AND ORDER

DAVID S. NELSON, District Judge.

Petitioner seeks a preliminary injunction enjoining the United States Army from ordering him to report for 119 days active duty in the Military Police Officer Basic Course until this court has ruled on his habeas corpus petition for full discharge from the military. Petitioner contends that the Army materially represented to him that he would enter the Judge Advocate General Corp (JAGC) as a military attorney upon graduation from law school and admission to a state bar. Petitioner argues that the Army's decision not to grant him a JAGC was a breach of contract and a violation of his constitutional rights. He claims he is entitled to recission of his contractual obligations to the military. The Army opposes petitioner's request for injunctive relief on the grounds that he has failed to demonstrate a substantial likelihood of success on the merits of his claim and further on the grounds that there has been no showing that he will suffer irreparable injury.

FACTS

Petitioner joined the Reserve Officers Training Corp (ROTC) in 1974 during his freshman year at Northeastern University. In 1977, he executed an enlistment contract committing himself to six years of service. Petitioner alleges that he executed the con-

tract after his ROTC instructors and recruitment literature had indicated to him that he would be assigned to the JAGC as an attorney if he: a) was accepted into an American Bar Association accredited law school; b) graduated from law school; and c) passed a state bar examination. The enlistment contract Tremblay executed did not express this understanding. The contract stated:

54 I have had this contract fully explained to me. I understand it, and certify that no promise of any kind has been made to me concerning assignment to duty, geographical area, schooling, special programs, assignment of government quarters, or transportation of dependents except as indicated.

55 I swear (or affirm) that the foregoing statements have been read to me, that my statements have been correctly recorded and are true in all respects and that I fully understand the conditions under which I am enlisting.

Petitioner was accepted at New England School of Law in 1979. He entered into a delay agreement allowing him to postpone his active duty. Paragraph 16(d) of the delay agreement, upon which petitioner places great weight, provides: "At the end of the delay period, a branch of service will be assigned that is consistent with post graduate subject discipline and military requirements (Not applicable to special medical program participants)."

After entering into the agreement petitioner received a letter from an Army official stating:

Even though you are currently delayed to complete the requirements for a law degree, you are not automatically assured of fulfilling your service obligation as a member of the Judge Advocate General's Corps. Specifically, you must apply for branch transfer into the Judge Advocate General's Corp in the fall of the senior year of law school. If you do not apply for active duty and branch transfer, your records will not be reviewed by JAGC branch and you will be assigned to another branch.

Petitioner, in 1981, and again in 1982, applied for a permanent JAGC position but in both instances was rejected. In July, 1983 he was advised that he was to be assigned as a Military Police Officer for a three-year tour of active duty in Germany. Petitioner requested transfer to reserve duty and the request was granted.

In the fall of 1982 petitioner had a change of heart and he requested permission to resign from the military. This request was denied. In April, 1983 Lieutenant Tremblay was issued active duty orders to commence June, 1983. This suit resulted.

CLAIMS

Petitioner claims the Army breached its contract with him by failing to honor the alleged representations of its ROTC instructors and educational delay agreement indicating that he would be granted a JAGC position upon graduation from law school and admission to a state bar. Petitioner says he was passed over in the JAGC selection process in favor of many less qualified applicants despite his record, which includes academic honors, membership on the law review and two summer internships with the JAGC.

More important, in petitioner's view, is his constitutional claim that he was denied a JAGC petition because he spoke critically about a recently passed federal statute known as the Defense Officer Personnel Management Act (DOPMA), 10 U.S.C. § 101 *et seq.* DOPMA, in pertinent part, reduces the rank and pay of attorneys entering the JAGC. Petitioner wrote several letters to a Congressman expressing his concern over the unfair and deleterious effects of DOPMA on reserve lieutenants attending law school. It is not disputed that at least one of petitioner's letters, and a reply from Senator Thurmond, were in his application file. Petitioner alleges that the criticisms he made of DOPMA were held against him in the JAGC selection process in violation of his First Amendment rights.

ANALYSIS OF CLAIMS

In determining whether to grant a preliminary injunction, the court must consider

four criteria: (1) whether plaintiff will suffer irreparable injury if the injunction is not granted; (2) whether such injury outweighs any harm which granting injunctive relief would inflict on the defendant; (3) whether the public interest will not be adversely affected by the granting of the injunction; and (4) whether plaintiff has exhibited a likelihood of success on the merits. *Planned Parenthood League of Massachusetts v. Bellotti*, 641 F.2d 1006, 1009 (1st Cir.1981).

As to the first criterion, I find that the petitioner will suffer irreparable injury if he is compelled to undertake active duty for 119 days. He will be forced to abandon his law practice for four months, leave his wife, and otherwise disrupt his life. Petitioner's duties as a military police officer promise little in the way of useful training for his chosen profession. As to the second criterion, I find that plaintiff's potential injury outweighs any harm the Army would suffer if the preliminary injunction were granted. The Army could, of course, function effectively without the services of one probably reluctant military police officer. As to the third criterion, I find that the public interest would not be adversely affected by the granting of a preliminary injunction. The public interest in the fair administration of military service laws and regulations dictates restraint in situations where such laws and regulations may be applied in an unfair manner. *See e.g., Novak v. Rumsfeld*, 423 F.Supp. 971, 972 (D.C.Cal.1976). As to the fourth and final criterion, the First Circuit Court of Appeals has written recently that "[w]hile each of these factors must be considered, 'the probability-of-success component has loomed large in cases before this court.'" *Mass. Assoc. of Older Americans, et al. v. Sharp*, 700 F.2d 749, 751 (1st Cir.1983), quoting, *Auburn News Co. v. Providence Journal Co.*, 659 F.2d 273, 277 (1st Cir. 1981). Reviewing the facts of this case in light of the applicable law, I find that petitioner's likelihood of success on the merits of his contract and constitutional claims is minimal.

*Contract Claim*

The factual circumstances of petitioner's enlistment in the Army do not support his contract claim. First, the plain language of petitioner's enlistment contract, particularly paragraph 54, does not indicate that Mr. Tremblay was being *guaranteed* a position in the JAGC. Second, although petitioner's delay agreement, quoted in part above, does indicate that service would be assigned that was "consistent with post graduate subject discipline," it also noted that service would be assigned that was consistent with "military requirements." At the time plaintiff sought a JAGC position there were, according to respondent, far fewer available JAGC positions than had existed in the recent past. The delay agreement had put petitioner on notice of this contingency. Therefore no promise of a position is inferrable from the delay agreement. Third, the letter petitioner received from an Army official after executing the delay agreement, put petitioner on notice that he was not assured of a JAGC position. Petitioner's failure to respond to the Army's notice indicates, at least tacitly, his understanding of the contingent nature of the JAGC duty assignment.

Petitioner places great weight on recent cases holding the government responsible for the oral promises, misstatements, and representations of its military recruiters. These cases hold that recission of a military contract is available where, first, misrepresentations were made even if innocently or negligently, and, second, such misrepresentations were material and induced the prospective recruit to enlist. *See e.g., Pence v. Brown*, 627 F.2d 872 (8th Cir.1980); *Santos v. Franklin*, 493 F.Supp. 847 (E.D.Pa.1980); *Withum v. O'Connor*, 506 F.Supp. 1374 (D.P.R.1981).

Reviewing the cases advanced by petitioner, I find they are distinguishable from the instant case on a number of grounds. First, in each of the cited cases there is evidence, beyond the plaintiffs' own allegations, that misrepresentations were actually made. Second, there is evidence, often undisputed, that the plaintiff in each case

relied on these misrepresentations in deciding to enlist. Third, there is no indication in the cited cases that the relevant enlistment contracts put the respective plaintiffs on notice that no promise as to duty assignment had been made. In *Pence v. Brown,* 627 F.2d 872, 874 (8th Cir.1980), for example, a case heavily relied upon by petitioner, it was undisputed that promises had been made to a medical student about the rank at which he would enter the Air Force. It was also undisputed that the student had relied on these promises in deciding to enlist. *Id.* Furthermore, in *Pence,* the enlistment contract the plaintiff signed was silent as to whether or not the recruit was promised a specific entering rank. *Id.* at 873. When he was not granted the promised rank, plaintiff's enlistment contract was rescinded and he was discharged from his military obligations.

In the instant case, unlike *Pence,* there is no evidence beyond petitioner's uncorroborated allegations that any oral representations concerning a JAGC position were made to him or that he relied on any such representations. Furthermore, the enlistment contract in the instant case, unlike that in *Pence,* clearly and specifically put petitioner on notice that he was *not* promised a specific duty assignment in the Army. Additionally, the supplemental delay agreement clearly could not have led petitioner to believe he was promised a specific duty assignment given its conjunctive reference to a duty assignment "consistent with post-graduate subject discipline *and military requirements*" (emphasis added). The other cases cited by petitioner are similarly distinguishable.

In the instant case I find no basis, other than petitioner's allegations, to conclude that any fraud or misrepresentations were practiced upon him in connection with his enlistment in the Army. I also find that the agreements petitioner entered into with the Army clearly did not promise him a JAGC position upon graduation from law school and admission to the bar. Furthermore petitioner, a college and law school student, had the capacity to read and understand these agreements. In the ab-

sence of fraud or imposition, *Chalfant v. Laird,* 420 F.2d 945 (9th Cir.1969), non-negligent or negligent misrepresentations, *Pence v. Brown,* 627 F.2d 872 (8th Cir. 1980), or ambiguity in the agreements themselves, *Dubeau v. Commanding Officer,* 440 F.Supp. 747 (D.Mass.1977), petitioner is bound by the contents of the agreements. It is therefore unlikely, for the purposes of this motion, that petitioner will succeed on the merits of his contract claim.

*Constitutional Claim*

Petitioner says that the "heart of [his] complaint is the violation of [his] constitutional rights by the Army's retaliation against his free speech." He argues that because at least one of the letters he wrote criticizing DOPMA ended up in his personnel file prior to the decisions denying him a JAGC position and because, allegedly, he was more qualified than other applicants who were accepted by the JAGC, his failure to be selected was the result of his critical letters and therefore a violation of his free speech rights.

The fundamental problem with petitioner's constitutional claim is that there is absolutely no evidence linking petitioner's letter with his failure to be selected for the JAGC. In fact what evidence there is points the other direction. In his letter to Senator Thurmond criticizing DOPMA petitioner expressed the view that JAGC officers should continue to be captains when placed on active duty. This position did *not* differ from the Army's position and in fact the Army was successful in obtaining "grandfather" legislation that permitted the entry of attorneys as captains for a limited period after the effective date of DOPMA. The petitioner's letter therefore could not have tread very heavily on the toes of JAGC officials overseeing the selection process. Furthermore, in the two instances in which petitioner was considered for a JAGC position, the acceptance rate was low—29% in the first instance (December 1981) and 9% in the second (April 1982). Among those rejected were many well

**228**

qualified candidates, like the petitioner, who were ROTC officers and had been summer JAGC interns. Thus, at the time petitioner applied, acceptance statistics were not in his favor, despite his qualifications.

While in the end it is not clear what the particular reason for petitioner's rejection was, it is clear that petitioner has adduced no evidence linking his rejection to the letters he wrote. Lacking such evidence, the Army must be accorded great discretion in its selection process. I therefore find, for the purposes of this motion for a preliminary injunction, that there is little likelihood petitioner will succeed on the merits of his constitutional claim. Having already found little likelihood of success on his contract claim, petitioner's motion for a preliminary injunction must be denied. *Auburn News Co., Inc. v. Providence Journal Co.*, 659 F.2d 273 (1st Cir.1981).

SO ORDERED.