Louis T. FALCONE, etc.,
Plaintiff, Appellant,

v.

Samuel R. PIERCE, Jr., etc.,
Defendant, Appellee.

No. 88–1503.

United States Court of Appeals,
First Circuit.

Heard Oct. 5, 1988.
Decided Dec. 29, 1988.

Brian M. Hurley with whom Jennifer S.D. Roberts, Gordon M. Orloff and Rackemann, Sawyer & Brewster, P.C., Boston, Mass., were on brief, for plaintiff, appellant.

Frederick E. Dashiell, Asst. U.S. Atty., with whom Frank L. McNamara, Jr., U.S. Atty., and Robert H. Farrell, Dept. of Housing and Urban Development, Boston, Mass., were on brief, for defendant, appellee.

Before CAMPBELL, Chief Judge, BROWN,* Senior Circuit Judge, and COFFIN, Circuit Judge.

* Of the Fifth Circuit, sitting by designation.

1. The original financing was $1,387,700.

COFFIN, Circuit Judge.

This is an appeal from the district court's dismissal of plaintiff's contract claim for rescission, based on misrepresentations by federal officials, against the federal government. The district court granted defendant's motion to dismiss on the ground that courts generally do not apply equitable estoppel against the government in a contract action. Because we determine that on the facts alleged the plaintiff would be unable to establish a traditional element of equitable estoppel, *i.e.*, justifiable reliance, we affirm on a different ground.

## I.

Appellant, Louis T. Falcone, is general partner of a partnership that owns a 101–unit low and moderate income apartment complex in Boston, Massachusetts. These apartments were financed in 1968 [1] under Section 221(d)(3) of the National Housing Act, 12 U.S.C. § 1715*l* (d)(3). In order to qualify for federal funding, the owners were required to enter a "Regulatory Agreement," committing the apartment complex to low and moderate income use for the forty year period of the note. Under the terms of the agreement, this use restriction could be avoided after twenty years by early repayment of the note.

In 1970, Falcone in his capacity as general partner of the owners executed a second note to secure an additional amount [2] under § 221(d)(3). This note also matured in forty years, and contained a similar use restriction. Like the first note, the owners could avoid the use restriction after twenty years through early repayment. Upon approval of the second note by HUD, the two notes and their accompanying mortgages were consolidated (the "FHA note").

In September of 1983, plaintiff claims that officials at HUD's Boston Regional Office initiated contact with him, and suggested that the owners undertake physical improvements at the housing complex with subsidized loan funds made available for that purpose by Section 201 of the Housing

2. The second note was for $141,900.

and Community Development Amendments of 1978, as amended (the "Flex program"), 12 U.S.C. § 1715z–1a. According to the complaint, these officials indicated that the owners would have to act quickly to insure access to program funds.

Falcone visited HUD officials at their Boston office within one week of their invitation. While there, he discussed the details of the Flex program with the assigned HUD loan officer and her supervisor. He allegedly asked these officials about provisions contained in three sets of documents required to secure funds under the Flex program: a Residual Receipts Note, a Use Agreement, and a Financial Assistance Contract. According to the complaint, these provisions "appeared to require that the Owner continue the project as a Section 221(d)(3) project until September, 2010." Falcone alleges that both the loan officer and supervisor told him that despite the terms of Flex documents, the owners would be allowed to avoid the use restriction by prepaying the Flex note and the original FHA note. Without having an attorney review these documents, and upon the oral representation of these HUD officials, Falcone signed the Flex documents on behalf of the owners.[3] Falcone asserts that he would not have executed these documents without the assurances of the regional HUD officials that the owners would be allowed to avoid use restrictions for the full term by prepayment of the notes.

In early 1984, the owners were approached by a third party interested in purchasing and developing the apartment complex. On reviewing the Flex documents, attorneys for the potential buyers concluded that the use restrictions would apply through 2010, and that they could not be avoided by prepayment of the FHA and Flex notes. This conclusion stymied the sale of the property. In response, Falcone alleges that the owners ceased withdrawing additional Flex funds to which they were entitled, and petitioned HUD for rescission or reformation of the Flex agreements to conform to Falcone's original

understanding. HUD denied the request, and this suit followed.

## II.

The district court, relying prominently on *Heckler v. Community Health Services*, 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984), and *Phelps v. Federal Emergency Management Agency*, 785 F.2d 13 (1st Cir. 1986), concluded that plaintiff's claim was barred by the government non-estoppel principle. Under this principle, a party generally cannot assert the misrepresentation of a federal official as the basis of a contract claim. *See generally Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947). The district court rejected Falcone's attempt to distinguish cases applying the government non-estoppel doctrine as cases for reformation, not rescission. The district court reasoned that "the policies supporting the denial of equitable estoppel in federal contract actions are strongly at work in this case."

### A.

■ The traditional elements of equitable estoppel are first, a material misrepresentation of a party who had reason to know of its falsity; second, reasonable reliance upon the misrepresentation; and third, some disadvantage to the party seeking to assert estoppel fairly traceable to the misrepresentation. *See Community Health Services*, 467 U.S. at 59, 104 S.Ct. at 2223. While distinguishable from an action for reformation, equitable estoppel in a contract action can lead to the same end. By disregarding portions of the written agreement which conflict with a party's oral representations reasonably relied on by the other party, the court effectively rewrites the contract.

The federal courts have long recognized important problems with the application of equitable estoppel in government contract actions. The chief concerns are two. First, to allow government contractual liability to turn, by operation of the judge-

---

**3.** Under the terms of the Flex note, the owners were to contribute $42,000 for improvements, after which HUD would make available up to $192,000 in subsidized loans.

made equitable estoppel doctrine, on the unauthorized acts of governmental agents would threaten to violate the separation of powers inherent in the federal constitution. In effect, the courts would expand the power of federal officials beyond specific legislative limits. Thus, in *Merrill,* the Supreme Court held that the scope of federal crop insurance could not be expanded to cover crops expressly excluded under the statute based on the misrepresentations of government agents. And in *Phelps,* this court held that the district court was not free to alter the procedure for perfecting a claim set forth by law even where a consumer relies, perhaps reasonably, on the purported waiver of those procedures by government agents.

The second, and perhaps more concrete, policy rationale for the government non-estoppel principle is protection of the public fisc. As an aspect of sovereign immunity, it has been recognized that in order to protect the resources essential to maintain government for all the people, it may be necessary in some instances to deny compensation to individuals harmed by government misconduct. When combined with considerations from the first policy concern, the strongest case for the government non-estoppel principle emerges: the need to protect the government against unscrupulous officials who may seek to profit through their fraudulent acts, possibly in collusion with private parties.

### B.

Falcone seeks to estop the government from asserting the terms of the contract extending the use restriction, specifically required by § 201 of the Act, based on the misrepresentations of HUD officials. He argues that the district court erred in applying the non-estoppel principle because that doctrine typically has been applied only where the private party seeks to receive the benefit of the bargain to which it assented. Falcone offers to repay immedi-

ately the funds borrowed under the Flex program, thereby returning the consideration the owners received from the government.

The district court rejected the proffered distinction between suits for reformation (or, alternatively viewed, specific performance) and suits for rescission because it viewed this case as implicating the policies of reformation suits. There is something to be said on both sides of this issue. The government, if rescission is ordered, stands to see a substantial (101–unit) low and moderate income housing project "lost." It may not be able to substitute these with equivalent housing at equivalent cost. There also remain possibilities of connivance between a government official and a private party to enable the latter to get out of a bad bargain. On the other hand, it is true that most of the cases applying the non-estoppel principle in favor of the government are cases where the private party seeks to hold the government to an advantageous bargain unauthorized by law. In the instant case, in contrast, appellant argues that he seeks no such advantage, that the public fisc is protected, and that rescission merely puts the government in as good a position as it had been prior to its agent's misrepresentation.

This appears to be the approach taken in *Pence v. Brown,* 627 F.2d 872 (8th Cir. 1980).[4] There, the court rescinded the plaintiff's enlistment contract based on a recruiter's innocent misrepresentation that the plaintiff would receive a higher officer's rank than that which he was eventually given. The United States attempts to distinguish this case. It contends that because the *Pence* court gave the government the option to avoid rescission by conferring the promised rank, it necessarily viewed the determination of the enlistee's rank as outside the scope of a binding statute or regulation. But the *Pence* court did not determine that the Air Force was

---

**4.** This case is quite different from a suit against the government for misrepresentations in contracting in which the complaint seeks money damages or specific performance. The proposition that the government cannot

be held responsible for the misstatements of its agents does not extend to representations which induce a contract when the remedy sought is rescission.
*Pence,* 627 F.2d at 874.

able to give the plaintiff in that case a higher rank under applicable regulations. The order in *Pence* contemplated, in the event the government could not waive the regulation, rescinding a contract the government wished to enforce because the private party's assent was secured through misrepresentation. *See also Shelton v. Brunson,* 465 F.2d 144 (5th Cir.1972) (rescission of enlistment agreement allowed where recruiter's representation was contrary to regulation).

We do not attempt today to decide whether or not a pure rescission case should be exempt from the government non-estoppel principle. Instead, we follow the lead of the Supreme Court in *Community Health Services:*

> Though the arguments the Government advances for [a flat rule disallowing estoppel against the Government] are substantial, we are hesitant, when it is unnecessary to decide this case, to say that there are *no cases* in which [these arguments] might be outweighed by the countervailing interest of citizens in some minimum standard of decency, honor, and reliability in their dealings with their Government.

467 U.S. at 60–61, 104 S.Ct. at 2224. We need not decide whether the government nonestoppel principle is properly applied in rescission actions, because appellant does not allege a case sufficient to satisfy the required element of reasonable reliance. We now turn to this issue.

### III.

■ In *Community Health Services,* the private party, a nonprofit corporation which had participated for some ten years in the medicare program, relied on the advice of the government's agent in seeking reimbursement under medicare for wages paid to certain health care workers. However, wages for these workers had already been funded through a separate federal program. The district court held that the private party could be required to reimburse the government. The court held that the party did not meet the traditional requirements for equitable estoppel, since it

was unreasonable to believe it could receive double reimbursement. The circuit court rejected this view, and further held that the non-estoppel principle did not apply to the "affirmative misconduct" of government agents. The government urged the Supreme Court to apply the non-estoppel principle to reverse the circuit court. Instead, the Court reversed the on the basis of the district court's rationale. The Court held that, because the private party had not established either that it adversely changed its position or that it reasonably relied on the misrepresentations, it failed to satisfy the traditional elements of equitable estoppel. *Id.* at 60–61, 104 S.Ct. at 2224–25.

In reaching this conclusion, the Court relied on several key factors. As regards the element of reasonable reliance, the Court cited the general rule that "those who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to law." *Id.* at 63, 104 S.Ct. at 2225. The Court emphasized that respondent, an ongoing participant in the medicare program, "had a duty to familiarize itself with the legal requirements for cost reimbursement" under the program. *Id.* at 64, 104 S.Ct. at 2226. Significantly, the Court cast strong doubt that a claimant in like circumstances will generally be able to demonstrate reasonable reliance solely on oral misrepresentations:

> The appropriateness of respondent's reliance is further undermined because the advice it received from [the government's agent] was oral.... The necessity for ensuring that governmental agents stay within the lawful scope of their authority, and that those who seek public funds act with scrupulous exactitude, argues strongly for the conclusion that an estoppel cannot be erected on the basis of the oral advice that underlay respondent's cost reports.

*Id.* at 65, 104 S.Ct. at 2226. *See also Jones v. Dept. of Health & Human Services,* 843 F.2d 851 (5th Cir.1988).

Given this precedent, we conclude that Falcone will be unable to demonstrate reasonable reliance as a matter of law. His

partnership had a long history of participation in the public housing program. Not only is he properly charged with knowledge of the requirements of the various HUD programs, but he had actual notice of the extended use restriction on the face of the Flex documents he signed. Falcone argues that without the aid of counsel, he was entitled to rely on the representations of the HUD loan officer and her supervisor. We disagree. Rather, his failure to have an attorney review the loan documents further demonstrates his failure to exercise proper diligence:

> If, at the time when he acted, [the party claiming the benefit of the estoppel] had knowledge of the truth, or had the means by which with reasonable diligence he could acquire the knowledge so that it would be negligence on his part to remain ignorant by not using those means, he cannot claim to have been misled by relying upon the representation or concealment.

3 J. Pomeroy, *Equity Jurisprudence* § 810, at 219 (footnote omitted). Had Falcone consulted an attorney, he likely would have avoided relying on the improper advice of HUD officials. The complaint indicates that attorneys reviewing the Flex documents for an interested buyer concluded, despite Falcone's contrary understanding, that the use restriction would remain in force through 2010.

## IV.

■ Appellant also presses on appeal an argument of no avail in the district court, that rescission is appropriate due to a mutual mistake of fact. Unlike the circumstances in *Kostelac v. United States*, 247 F.2d 723 (9th Cir.1957), where a waste hauler's contract was rescinded because his bid was based on the government's mistaken indication of the quantity of waste to be removed, this is obviously not a case of mistaken fact. Falcone did not allege that HUD officials told him that the statute had changed, or that they had express authority to alter the statutorily required use restriction. We therefore reject the argument that rescission is appropriate based on mistake of fact.

■ Though appellant does not argue it as such, the complaint does allege a mistake of law. Under modern principles of contract law, mistake of law can serve as a basis for rescission:

> If the mistake of law that induced the making or the performance of a contract by one party was caused by the fraudulent misrepresentation of the law by the other, or by his innocent misrepresentation if the relations of the parties are such as to make it reasonable for the one to rely upon the representations of the other, the appropriate relief by rescission, restitution, or reformation will be given to the injured party.

3 A. Corbin, *Corbin on Contracts* § 618 (1960).

However, even viewed as a mistake of law claim, the complaint merely raises the identical question presented by the non-estoppel issue: whether Falcone reasonably relied on the alleged misrepresentations by HUD officials. We therefore reject the mistake claim for the reasons set forth in Part III, *supra.*

## V.

We view appellant's reliance on the misrepresentations of HUD officials as unreasonable as a matter of law. Because appellant will be unable to satisfy the traditional elements of equitable estoppel, the complaint was properly dismissed. *Affirmed.*

JOHN R. BROWN, Senior Circuit Judge (concurring).

I concur in the result and in the opinion, but lest this might involve me in possible conflicts in my home circuit, *Shelton v. Brunson*, 465 F.2d 144 (5th Cir.1972), I prefer to put my concurrence primarily on parts III, IV, and V.